# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MATTHEW MORRISON**, et al.

           Plaintiffs,

v.

**IHRONE INC.**, **LGC GLOBAL, INC.**, and **LGC GLOBAL ENERGY FM, LLC**, Jointly and Severally,

           Defendants.

Case No.

Hon.

**COLLECTIVE AND CLASS ACTION**

---

Adam M. Taub (P78334)
CROSON, TAUB, & MICHAELS, PLLC
*Attorney for Plaintiff*
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI  48108
(734) 519-0872
ataub@ctmlawyers.com

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Class representative Matthew Morrison has a pending action against the same Defendants regarding his discharge in the Eastern District of Michigan. That action is 26-cv-10727 and is assigned to Judge Jonathan J.C. Grey. Mr. Morrison's claims in that case involve retaliation for complaining about the conduct alleged in this Complaint. There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in this Complaint.

NOW COME Plaintiffs, Matthew Morrison, Ahmed Almarsoumi, Scott Benson, Robbie Bristow, Keith Dean, Devin Divine, Ryan Forth, Kyle Hahn, Mathew Halprin, Corey Hogg, Ethan Jeffery, Allen LaBelle, Brian Lashinski, Cesar Mejia, Erick Murphy, Nicholas Dee Norman, Andre Platevoet, Byran Quaker, George Ramirez, Brian Robichaud, Jeffrey Rowell, Matthew Scherer, Darren Smith, Timothy Spicer, Jonathan Stokes, Michael Thompson, and Nicholas Walls, and on behalf of other persons similarly situated, known and unknown, by and through their attorneys, Croson, Taub, & Michaels, PLLC, and for their Complaint against Defendants, IHRONE Inc., LGC Global, Inc., and LGC Global Energy FM, LLC, state as follows:

## INTRODUCTION

This is a civil action brought on behalf of individuals who are or were employed by Defendants IHRONE Inc., LGC Global, Inc., and LGC Global Energy FM, LLC (referred to collectively as "LGC Global" or "Defendants") in various hourly laborer and skilled laborer positions. In violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Michigan Improved Workforce Opportunity Wage Act ("MIWOWA"), M.C.L. § 408.931, *et seq.*, Defendants pay their hourly workers less than one-and-a-half times their regular rate of pay for hours worked in excess of forty (40) hours in a week depriving Plaintiffs and similarly situated employees, known or unknown, of fair compensation for their labor.

2

Additionally, Defendants provide labor for construction projects, including contracts on public works with federal, state, and local governmental entities. As such, on a number of projects for which Defendants supplied laborers, employees were entitled to a minimal rate of pay at the applicable federal or state prevailing wage rate. *See* 40 U.S.C. § 3141, *et seq.*; MCL § 408.1101, *et seq.* However, Defendants regularly fail to pay Plaintiffs and similarly situated employees, known or unknown, the relevant State prevailing wage for their positions on such projects. As such, Defendants have violated the Michigan Prevailing Wages on State Projects Act ("PWSPA").

Therefore, Plaintiffs now bring this FLSA collective action and class action under MIWOWA and PWSPA on behalf of a class of similarly situated individuals, known and unknown, who were employed by Defendants in hourly laborer and skilled laborer positions. They seek all available remedies under the law.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Matthew Morrison is an individual residing in Webberville, Michigan in Ingham County.

2. Plaintiff Ahmed Almarsoumiu is an individual residing in Dearborn Heights, Michigan in Wayne County.

3. Plaintiff Scott Benson is an individual residing in Chesterfield Township, Michigan in Macomb County.

3

4.     Plaintiff Robbie Bristow is an individual residing in Jackson, Michigan in Jackson County.

5.     Plaintiff Keith Dean is an individual residing in Belleville, Michigan in Wayne County.

6.     Plaintiff Devin Divine is an individual residing in Grand Blanc, Michigan in Genesee County.

7.     Plaintiff Ryan Forth is an individual residing in Harrison Township, Michigan in Macomb County.

8.     Plaintiff Kyle Hahn is an individual residing in Linden, Michigan in Genesee County.

9.     Plaintiff Mathew Halprin is an individual residing in Livonia, Michigan in Wayne County.

10.     Plaintiff Corey Hogg is an individual residing in Troy, Michigan in Oakland County.

11.     Plaintiff Ethan Jeffery is an individual residing in Linden, Michigan in Genesee County.

12.     Plaintiff Allen LaBelle is an individual residing in Clay, Michigan in St. Clair County.

13.     Plaintiff Brian Lashinski is an individual residing in Novi, Michigan in Oakland County.

14.     Plaintiff Cesar Mejia is an individual residing in Southfield, Michigan in Oakland County.

15.     Plaintiff Erick Murphy is an individual residing in St. Clair Shores, Michigan in Macomb County.

16.     Plaintiff Nicholas Dee Norman is an individual residing in Holt, Michigan in Ingham County.

17.     Plaintiff Andre Platevoet is an individual residing in Romeo, Michigan in Macomb County.

18.     Plaintiff Bryan Quaker is an individual residing in Highland Park, Michigan in Wayne County.

19.     Plaintiff George Ramirez is an individual residing in Belleville, Michigan in Wayne County.

20.     Plaintiff Brian Robichaud is an individual residing in Rochester Hills, Michigan in Oakland County.

21.     Plaintiff Jeffrey Rowell is an individual residing in Southgate, Michigan in Wayne County.

22.     Plaintiff Matthew Scherer is an individual residing in Roseville, Michigan in Macomb County.

23.     Plaintiff Darren Smith is an individual residing in Milford, Michigan in Oakland County.

5

24.     Plaintiff Timothy Spicer is an individual residing in Fowlerville, Michigan in Livingston County.

25.     Plaintiff Jonathan Stokes is an individual residing in Jackson, Michigan in Jackson County

26.     Plaintiff Michael Thompson is an individual residing in Owosso, Michigan in Shiawassee County.

27.     Plaintiff Nicholas Walls is an individual residing in Whitmore Lake, Michigan in Washtenaw County.

28.     Defendant IHRONE Inc. is a domestic profit corporation with a registered business agent in Troy, Michigan in Oakland County. Defendant has a registered office in Detroit, Michigan in Wayne County.

29.     Defendant LGC Global, Inc. is a domestic profit corporation with a registered office in Detroit, Michigan in Wayne County.

30.     Defendant LGC Global Energy FM, LLC is a domestic limited liability company with a registered office in Detroit, Michigan in Wayne County.

31.     Defendants IHRONE Inc., LGC Global, Inc., and LGC Global Energy FM, LLC are collectively referred to herein as "Defendants" or "LGC Global". Defendants are or were joint employers of Plaintiffs because they maintained sufficient control over the essential terms and conditions of their employment,

6

including but not limited to having a common Human Resources Department, employment policies, and management structure.

32.     At all times relevant hereto, Plaintiffs performed work for Defendants in the Eastern District of Michigan.

33.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

34.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims. The pendant claims are part of the same case or controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

35.     Venue is proper in this Court because Defendants obligated themselves to Plaintiffs within the Eastern District of Michigan, Plaintiffs are or were employed by Defendants within the Eastern District of Michigan, and the actions giving rise to this lawsuit occurred within the Eastern District of Michigan.

36.     Defendants are an employer and Plaintiffs are or were employees within the meaning of the FLSA and the WPA. Furthermore, Defendants are a "private contracting agent," and Plaintiffs are or were "construction mechanics" as defined by the PWSPA.

7

## STATEMENT OF FACTS

37.     Plaintiffs are or were employees of Defendants who were non-bargained for and paid on a non-exempt hourly basis.

38.     In part, Defendants provide labor for construction projects, including contracts on public works with federal, state, and local governmental entities.

39.     As such, on a number of projects for which Defendants supplied laborers, employees were entitled to a minimal rate of pay at the applicable federal or state prevailing wage rate. *See* 40 U.S.C. § 3141, *et seq.*; MCL § 408.1101, *et seq.*

40.     Plaintiffs worked on projects for which the prevailing wage rate applied as well as projects where the prevailing wage rate did not apply.

41.     Plaintiffs received the same rate of pay on projects for which the prevailing wage rate applied as well as projects where the prevailing wage rate did not apply.

42.     On projects covered by a prevailing wage rate and those that were not, Plaintiffs regularly worked in excess of forty (40) hours per week.

43.     Although Plaintiffs received a pay premium for their overtime hours, they received less than one-and-a-half times their regular rate of pay for hours worked in excess of forty (40) hours per week.

44.     It is Defendants' policy to pay its non-exempt hourly employees less than one-and-a-half times their regular rate of pay for hours worked in excess of forty (40) hours per week.

45.     Additionally, on projects covered by the State prevailing wage rate, Defendants did not increase Plaintiffs' regular rate of pay or overtime rate of pay, resulting in them receiving less than the State prevailing wage rate for their positions.

46.     It is Defendants' policy to not increase the rate of pay of their laborers and skilled laborers when working on projects covered under the PWSPA to at least the applicable prevailing wage rate.

47.     Plaintiffs notified Defendants that their failure to pay time-and-a-half their regular rate of pay for overtime hours violates the FLSA, but Defendants did not change their overtime rates.

48.     Plaintiffs notified Defendants that they failed to receive the State prevailing wage rate on projects covered by the PWSPA. But Defendants failed to increase Plaintiffs' pay rate on such projects.

49.     Plaintiff Matthew Morrison began working for Defendants in or about March 2019 as a Heavy Equipment Operator. He was eventually promoted to an Operator and Foreman.

50.     Defendants terminated Plaintiff Morrison on or about December 5, 2025.

9

51. Throughout his employment, Plaintiff Morrison would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

52. Throughout his employment, including within the past three years, Plaintiff Morrison worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

53. Plaintiff Ahmed Almarsoumi began working for Defendants in or about April 2025 as a Laborer.

54. He is still employed by Defendants.

55. Throughout his employment, Plaintiff Almarsoumi would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

56. Throughout his employment, including within the past three years, Plaintiff Almarsoumi worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

57. Plaintiff Scott Benson began working for Defendants on or about February 28, 2025 as a Laborer.

58. He is still employed by Defendants.

10

59. Throughout his employment, Plaintiff Benson would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

60. Throughout his employment, including within the past three years, Plaintiff Benson worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

61. Plaintiff Robbie Bristow began working for Defendants on or about August 1, 2022 as an Operator and Foreman.

62. He is still employed by Defendants.

63. Throughout his employment, Plaintiff Bristow would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

64. Throughout his employment, including within the past three years, Plaintiff Bristow worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

65. Plaintiff Keith Dean began working for Defendants in or about October 2024 as an Operator.

66. Defendants terminated Plaintiff Dean in or about November 2025.

67.     Throughout his employment, Plaintiff Dean would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

68.     Throughout his employment, including within the past three years, Plaintiff Dean worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

69.     Plaintiff Devin Divine began working for Defendants in or about April 2024 as an Operator and Foreman.

70.     He is still employed by Defendants.

71.     Throughout his employment, Plaintiff Divine would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

72.     Throughout his employment, including within the past three years, Plaintiff Divine worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

73.     Plaintiff Ryan Forth began working for Defendants in or about May 2022 as a Laborer.

74.     He is still employed by Defendants.

12

75. Throughout his employment, Plaintiff Forth would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

76. Throughout his employment, including within the past three years, Plaintiff Forth worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

77. Plaintiff Kyle Hahn began working for Defendants on or about March 11, 2025 as an Operator and Foreman.

78. He is still employed by Defendants.

79. Throughout his employment, Plaintiff Hahn would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

80. Throughout his employment, including within the past three years, Plaintiff Hahn worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

81. Plaintiff Mathew Halprin began working for Defendants in or about 2021 as a Pipelayer.

13

82.     He resigned his employment in or about 2023 but became re-employed with Defendants in the same position approximately two weeks later.

83.     He then resigned his employment again on or about June 24, 2024.

84.     Throughout his employment, Plaintiff Halprin would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

85.     Throughout his employment, including within the past three years, Plaintiff Halprin worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

86.     Plaintiff Corey Hogg began working for Defendants on or about March 20, 2022 as a Laborer. He received a promotion to Pipelayer in or around spring 2023. He then received another promotion to Loader Operator on or about November 1, 2025.

87.     He is still employed by Defendants.

88.     Throughout his employment, Plaintiff Hogg would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

14

89. Throughout his employment, including within the past three years, Plaintiff Hogg worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

90. Plaintiff Ethan Jeffery began working for Defendants in or about December 2024 as a Pipelayer.

91. He is still employed by Defendants.

92. Throughout his employment, Plaintiff Jeffery would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

93. Throughout his employment, including within the past three years, Plaintiff Jeffery worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

94. Plaintiff Allen LaBelle began working for Defendants in or about 2016 as a Truck Driver. In or about 2021 or 2022, Plaintiff LaBelle received a promotion to Operator and Foreman.

95. He is still employed by Defendants.

96. Throughout his employment, Plaintiff LaBelle would often work in excess of forty (40) hours per week, including within the last two years. But the

premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

97.   Throughout his employment, including within the past three years, Plaintiff LaBelle worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

98.   Plaintiff Brian Lashinski began working for Defendants in or about March 2019 as a Pipelayer. He received a promotion to Operator and Foreman in or about January 2026.

99.   He is still employed by Defendants.

100.   Throughout his employment, Plaintiff Lashinski would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

101.   Throughout his employment, including within the past three years, Plaintiff Lashinski worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

102.   Plaintiff Cesar Mejia began working for Defendants in or about July 2024 as a Laborer.

103.   He is still employed by Defendants.

16

104. Throughout his employment, Plaintiff Mejia would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

105. Throughout his employment, including within the past three years, Plaintiff Mejia worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

106. Plaintiff Erick Murphy began working for Defendants in or about 2022 as a Pipelayer.

107. He is still employed by Defendants.

108. Throughout his employment, Plaintiff Murphy would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

109. Throughout his employment, including within the past three years, Plaintiff Murphy worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

110. Plaintiff Nicholas Dee Norman began working for Defendants in or about 2020 as an Operator. In or about 2022 or 2023, Plaintiff Norman received a promotion to Operator and Foreman.

17

111. He is still employed by Defendants.

112. Throughout his employment, Plaintiff Norman would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

113. Throughout his employment, including within the past three years, Plaintiff Norman worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

114. Plaintiff Andre Platevoet began working for Defendants in or about 2024 as a Top Man.

115. He is still employed by Defendants.

116. Throughout his employment, Plaintiff Platevoet would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

117. Throughout his employment, including within the past three years, Plaintiff Platevoet worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

118. Plaintiff Bryan Quaker began working for Defendants in or about 2024 as a Laborer.

18

119. Defendants terminated Plaintiff Quaker's employment on or about March 24, 2026.

120. Throughout his employment, Plaintiff Quaker would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

121. Throughout his employment, including within the past three years, Plaintiff Quaker worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

122. Plaintiff George Ramirez began working for Defendants in or about 2025 as a Laborer.

123. He is still employed by Defendants.

124. Throughout his employment, Plaintiff Ramirez would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

125. Throughout his employment, including within the past three years, Plaintiff Ramirez worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

126.   Plaintiff Brian Robichaud began working for Defendants in or about 2019 as a Laborer.

127.   He resigned his employment on or about January 30, 2026.

128.   Throughout his employment, Plaintiff Robichaud would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

129.   Throughout his employment, including within the past three years, Plaintiff Robichaud worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

130.   Plaintiff Jeffrey Rowell began working for Defendants in or about 2016 as a Heavy Equipment Operator.

131.   Defendants terminated his employment in or about May or June 2025.

132.   Throughout his employment, Plaintiff Rowell would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

133.   Throughout his employment, including within the past three years, Plaintiff Rowell worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

134.  Plaintiff Matthew Scherer began working for Defendants on or about December 20, 2024 as a Pipelayer.

135.  He is still employed by Defendants.

136.  Throughout his employment, Plaintiff Scherer would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

137.  Throughout his employment, including within the past three years, Plaintiff Scherer worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

138.  Plaintiff Darren Smith began working for Defendants on or about March 13, 2025 as a Laborer.

139.  He is still employed by Defendants.

140.  Throughout his employment, Plaintiff Smith would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

141.  Throughout his employment, including within the past three years, Plaintiff Smith worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

142. Plaintiff Timothy Spicer began working for Defendants in or about 2024 as a Truck Driver.

143. He is still employed by Defendants.

144. Throughout his employment, Plaintiff Spicer would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

145. Throughout his employment, including within the past three years, Plaintiff Spicer worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

146. Plaintiff Jonathan Stokes began working for Defendants in or about August 2001 as a Laborer.

147. He is still employed by Defendants.

148. Throughout his employment, Plaintiff Stokes would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

149. Throughout his employment, including within the past three years, Plaintiff Stokes worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

22

150. Plaintiff Michael Thompson began working for Defendants in or about March 2017 as a Truck Driver.

151. He is still employed by Defendants.

152. Throughout his employment, Plaintiff Thompson would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

153. Throughout his employment, including within the past three years, Plaintiff Thompson worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

154. Plaintiff Nicholas Walls began working for Defendants in or about April 2025 as a Truck Driver.

155. He is still employed by Defendants.

156. Throughout his employment, Plaintiff Walls would often work in excess of forty (40) hours per week, including within the last two years. But the premium for his overtime hours was paid at a rate less than one-and-a-half times his regular rate of pay.

157. Throughout his employment, including within the past three years, Plaintiff Walls worked on projects covered under the PWSPA but did not receive the applicable prevailing wage rate for the position(s) he held.

## CLASS AND COLLECTIVE ACTION

158.   Plaintiffs incorporate by reference all preceding paragraphs.

159.   Count I is brought as a collective action under the FLSA, 29 U.S.C. § 216(b).

160.   A copy of Plaintiffs' consent to bring their claims for receiving overtime pay at a rate less than one-and-a-half times their regular rate of pay under the FLSA as a representative action is attached hereto as *Exhibit A*.

161.   Count II is brought as a class action under the MIWOWA, and Count III is brought as a class action under the PWSPA.

162.   The representatives and those similarly situated have been equally affected by Defendants' invalid pay practices.

163.   Furthermore, those class members still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

164.   The issues in this lawsuit present common questions of law and fact that predominate over any variations, if any, which may exist between individuals within the class.

165.   The representatives, those similarly situated, and Defendants have a commonality of interest in the subject matter and remedy sought.

166.   A collective and class action is appropriate because the Plaintiffs are "similarly situated."

167.   The class of individuals on behalf of whom the named Plaintiffs bring this collective and class action are similarly situated because they have been or are employed in the same or similar positions as the individually named Plaintiffs by Defendants; all individuals were or are subject to the same or similar unlawful practices, policies, or plans as the individually named Plaintiffs; and their claims are based upon the same legal theory as those of the named Plaintiffs.

168.   Defendants pay or paid Plaintiffs, and upon information and belief, other members of the class, less than time-and-a-half their regular rate of pay for hours worked in excess of forty (40) per week.

169.   Defendants pay or paid Plaintiffs, and upon information and belief, other members of the class, less than the State prevailing wage for their positions on projects for which the State prevailing wage applied.

170.   The precise number of individuals in the class is known only to the Defendants. The class is believed to include over 100 individuals. Joinder of all class members is impracticable.

171.   There are questions of law and fact common to the class. The common questions include but are not limited to:

   a.   Whether Defendants fail to pay their non-exempt hourly employees one-and-a-half times their regular rate of pay for hours worked in excess of forty (40) hours per week;

25

b. Whether Defendants pay less than the applicable State prevailing wage on projects for which the State prevailing wage applied; and

c. Whether Plaintiffs are entitled to actual or liquidated damages and the other requested relief.

172. Plaintiffs' claims are typical of the class they seek to represent. Plaintiffs and the class work or have worked for Defendants and have been subjected to a pattern or practice of not being paid at the lawful overtime rate of time-and-a-half and not being paid at the State prevailing wage on projects where it applied. Defendants acted and refused to act on grounds generally applicable to the class, which makes declaratory relief with respect to the class appropriate. These typical, common claims predominate over any questions affecting only individual class members.

173. The representatives are able to fairly and adequately represent and protect the interests of those similarly situated. The named Plaintiffs have the same interests as do the other members of the class and they will vigorously prosecute these interests on behalf of the class.

174. Plaintiffs' counsel is competent and experienced in complex class action employment litigation. Plaintiffs' counsel has handled numerous actions in federal courts, including collective actions under the FLSA.

175. If individual actions were required to be brought by each injured or affected member of the class, the result would be a multiplicity of actions creating a hardship to those similarly situated, Defendants, and the resources of the Court.

176. A collective and class action is an appropriate method for fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

177. A collective and class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Many members of the class are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance. The relative damages suffered by individual members are small compared to the expense and burden of individual prosecution of this litigation. In addition, collective and class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' actions. It is desirable that the claims be heard in this forum since Defendants are subject to the Court's jurisdiction, and the actions giving rise to claim occurred in this district. A collective action can be

managed without undue difficulty because Defendants have regularly committed the violations of which the Plaintiffs complain and Defendants are required to maintain detailed records concerning each class member.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**COLLECTIVE ACTION**
**<u>Failure to Pay Overtime Wages</u>**

178.   Plaintiffs incorporate by reference all preceding paragraphs.

179.   At all times relevant to this action, Plaintiffs and similarly situated employees, known or unknown, were employees of Defendants within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

180.   At all times relevant to this action, Defendants were the employer(s) of Plaintiffs and similarly situated employees, known or unknown, within the meaning of the FLSA, 29 U.S.C. § 201, *et seq.*

181.   In violation of the FLSA, 29 U.S.C. § 207, Defendants intentionally failed to pay Plaintiffs and similarly situated employees, known or unknown, at a rate of time-and-a-half their regular rate of pay for hours worked in excess of forty (40) in a week.

182.   Defendants knowingly, intentionally and willfully failed to pay Plaintiffs and similarly situated employees, known or unknown, at a rate of time-and-a-half for all hours worked in excess of forty in any given work week, as evidenced by the experiences of the named Plaintiffs and opt-ins.

28

183.   Defendants have a pattern and practice of failing to pay at a rate of time-and-a-half for all hours worked in excess of forty in any given work week for all of its employees, as evidenced by the experiences of the named Plaintiffs and opt-ins.

184.   WHEREFORE, Plaintiffs and similarly situated employees, known or unknown, are entitled to an award of damages including but not limited to back pay, compensatory damages, liquidated damages, punitive damages, costs, attorneys' fees, prejudgment interest and other damages as allowed by law and equity.

## COUNT II
## VIOLATION OF THE MICHIGAN IMPROVED WORKFORCE OPPORTUNITY WAGE ACT
## CLASS ACTION
## Failure to Pay Overtime Wages

185.   Plaintiffs incorporate by reference all preceding paragraphs.

186.   At all times relevant to this action, Plaintiffs and similarly situated employees, known or unknown, were employees of Defendants within the meaning of the Michigan Improved Workforce Opportunity Wage Act ("MIWOWA"), MCL § 408.932(c).

187.   At all times relevant to this action, Defendants were the employer(s) of Plaintiffs and similarly situated employees, known or unknown, within the meaning of the MIWOWA, MCL § 408.932(d).

188.   In violation of the MIWOWA, MCL § 408.934a, Defendants intentionally failed to pay Plaintiffs and similarly situated employees, known or

29

unknown, at a rate of time-and-a-half their regular rate of pay for hours worked in excess of forty (40) in a week.

189.   Defendants knowingly, intentionally and willfully failed to pay Plaintiffs and similarly situated employees, known or unknown, at a rate of time-and-a-half for all hours worked in excess of forty in any given work week, as evidenced by the experiences of the named Plaintiffs and other class members.

190.   Defendants have a pattern and practice of failing to pay at a rate of time-and-a-half for all hours worked in excess of forty in any given work week for all of its employees, as evidenced by the experiences of the named Plaintiffs and other class members.

191.   WHEREFORE, Plaintiffs and similarly situated employees, known or unknown, are entitled to an award of damages including but not limited to back pay, compensatory damages, exemplary damages, liquidated damages, punitive damages, costs, attorneys' fees, prejudgment interest and other damages as allowed by law and equity.

**COUNT III**
**VIOLATION OF THE MICHIGAN PREVAILING WAGES ON STATE**
**PROJECTS ACT**
**CLASS ACTION**
**Failure to Pay Prevailing Wages**

192.   Plaintiffs incorporate by reference all preceding paragraphs.

193. At all relevant times, Defendants were a "private contracting agent" and Plaintiffs and similarly situated employees, known or unknown, were "construction mechanics" as defined by the Michigan Prevailing Wages on State Projects Act ("PWSPA"). MCL § 408.1101(b), (i).

194. Under MCL § 408.1102(2), "A contractor or subcontractor shall pay to its construction mechanics wages and fringe benefits at the rates required under an applicable contract for a state project."

195. Additionally, under MCL § 408.1103, "A contracting agent, before advertising for bids on a state project, shall have the commissioner determine the prevailing rates of wages and fringe benefits for all classes of construction mechanics called for in the contract."

196. As described above, Defendants bid on and received contracts to provide labor on projects covered under the PWSPA.

197. On information and belief, Defendants were aware of the applicable prevailing wage rates they were required to pay Plaintiffs and similarly situated employees, known or unknown, on such projects.

198. As described above, despite this knowledge and in violation of PWSPA, Defendants failed to pay Plaintiffs and similarly situated employees, known or unknown, the applicable prevailing wage rates on such projects.

199. Defendants knowingly, intentionally and willfully failed to pay Plaintiffs and similarly situated employees, known or unknown, at the applicable prevailing wage rate on projects covered under the PWSPA, as evidenced by the experiences of the named Plaintiffs and other class members.

200. Defendants have a pattern and practice of failing to pay at the applicable prevailing wage rate on projects covered under the PWSPA for all of its employees, as evidenced by the experiences of the named Plaintiffs and other class members.

201. WHEREFORE, Plaintiffs and similarly situated employees, known or unknown, are entitled to an award of damages including but not limited to back pay, compensatory damages, exemplary damages, liquidated damages, civil penalties, punitive damages, costs, attorneys' fees, interest assessed up to 10% per annum, and other damages as allowed by law and equity.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs Matthew Morrison, Ahmed Almarsoumi, Scott Benson, Robbie Bristow, Keith Dean, Devin Divine, Ryan Forth, Kyle Hahn, Mathew Halprin, Corey Hogg, Ethan Jeffery, Allen LaBelle, Brian Lashinski, Cesar Mejia, Erick Murphy, Nicholas Dee Norman, Andre Platevoet, Bryan Quaker, George Ramirez, Brian Robichaud, Jeffrey Rowell, Matthew Scherer, Darren Smith, Timothy Spicer, Jonathan Stokes, Michael Thompson, and Nicholas Walls, and on

32

behalf of other persons similarly situated, known and unknown, request that this Honorable Court grant the following relief:

a. permission for individuals throughout the United States who are currently employed or were employed by Defendants as non-bargained-for laborers and skilled laborers who were paid less than time-and-a-half their regular rate of pay for hours in excess of forty (40) in a week, to opt-in to this action, pursuant to § 216(b) of the FLSA;

b. permission to certify this matter as a class action for individuals throughout the United States who are currently employed or were employed by Defendants as non-bargained-for laborers and skilled laborers who were paid less than time-and-a-half their regular rate of pay for hours in excess of forty (40) in a week in violation of the MIWOWA or were paid less than the prevailing rate of pay on projects subject to the PWSPA, pursuant to FRCP 23;

c. back pay for the difference between the overtime wage (time-and-a-half the regular rate of pay) Plaintiffs and similarly situated employees, known or unknown, should have received under the FLSA and MIWOWA, and the hourly wages actually paid;

33

d. back pay for the difference between the prevailing wage rate Plaintiffs and similarly situated employees, known or unknown, should have received under the PWSPA, and the hourly wages and benefits actually paid;

e. liquidated and multiple damages as allowed by law, including double damages under the FLSA and MIWOWA;

f. compensatory damages, exemplary damages, and punitive damages;

g. an injunction prohibiting Defendants from further violations of the law as described here;

h. post-judgment assignment of attorneys' fees, costs, and interest, including interest at a rate of 10% per annum pursuant to the PWSPA; and any other relief to which Plaintiffs may be entitled.

Respectfully Submitted,
CROSON, TAUB, & MICHAELS, PLLC


/s/ Adam M. Taub_____
Adam M. Taub (P78334)
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

Dated: March 27, 2026

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MATTHEW MORRISON**, et al.

              Plaintiffs,

v.

**IHRONE INC.**, **LGC GLOBAL, INC.**, and **LGC GLOBAL ENERGY FM, LLC**, Jointly and Severally,

              Defendants.

Case No.

Hon.

<u>**COLLECTIVE AND CLASS ACTION**</u>

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
*Attorney for Plaintiff*
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI  48108
(734) 519-0872
ataub@ctmlawyers.com

---

## <u>DEMAND FOR TRIAL BY JURY</u>

**NOW COME** Plaintiffs Matthew Morrison, Ahmed Almarsoumi, Scott Benson, Robbie Bristow, Keith Dean, Devin Divine, Ryan Forth, Kyle Hahn, Mathew Halprin, Corey Hogg, Ethan Jeffery, Allen LaBelle, Brian Lashinski, Cesar Mejia, Erick Murphy, Nicholas Dee Norman, Andre Platevoet, Bryan Quaker, George Ramirez, Brian Robichaud, Jeffrey Rowell, Matthew Scherer, Darren Smith,

Timothy Spicer, Jonathan Stokes, Michael Thompson, and Nicholas Walls, and on behalf of other persons similarly situated, known and unknown, through their attorneys, Croson, Taub, & Michaels, PLLC, and hereby demand a trial by jury, for all issues so triable.

Respectfully Submitted,
CROSON, TAUB, & MICHAELS, PLLC


/s/ Adam M. Taub_____
Adam M. Taub (P78334)
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

Dated: March 27, 2026

2